UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**RSPS HOLDINGS, LLC AND SRS MILLEDGEVILLE, LLC D/B/A SHANE'S RIB SHACK**<br><br>Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMAND |

## COMPLAINT

This is an action under Title I of the Civil Rights Act of 1991 and Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") to correct unlawful employment practices and to provide appropriate relief to Katherine Bates ("Bates"), who was adversely affected by the unlawful employment practices. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant RSPS Holdings, LLC and Defendant SRS Milledgeville d/b/a Shane's Rib Shack ("Defendants") discriminated against Bates by subjecting her to a hostile work environment based on her sex (female), by failing to take prompt and effective remedial action to remedy the hostile work environment, and by terminating her employment in retaliation for engaging in statutorily protected activity, all in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized pursuant to: Sections 706(f)(1) and (3) of Title VII, 42, U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Georgia, Macon Division.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of both Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), 42 U.S.C. § 2000e-6.

4. Defendant RSPS Holdings, LLC ("RSPS Holdings") is a limited liability company organized under the laws of the State of Delaware. Upon information and belief, Defendant RSPS Holdings owns, operates and manages multiple Shane's Rib Shack restaurant franchises in the State of Georgia. Through its ownership, operation and management of these restaurants, Defendant RSPS Holdings has conducted business in the State of Georgia since at least August 21, 2021.

5. Defendant SRS Milledgeville, LLC ("SRS Milledgeville") is a limited liability company organized under the laws of the State of Georgia. Upon information and belief, Defendant SRS Milledgeville owns, operates and manages at least one Shane's Rib Shack restaurant franchise in the State of Georgia. Through its ownership, operation and management of these restaurants, Defendant SRS Milledgeville has conducted business in the State of Georgia since at least August 21, 2021.

6. Upon information and belief, Defendant RSPS Holdings owns, operates and manages Defendant SRS Milledgeville.

7. Upon information and belief, Defendants maintain the same principal place of business at 829 Fairways Ct, Suite 200, Stockbridge, GA.

8. During the administrative proceedings relevant to this action, Defendant RSPS Holdings represented that it was the proper party to respond to the EEOC charge filed against Defendant SRS Milledgeville.

9. During the administrative proceedings relevant to this action, Defendant RSPS Holdings represented that it "does business as" Defendant SRS Milledgeville.

10. Upon information and belief, Defendant RSPS Holdings offers input and guidance into employment decisions made by Defendant SRS Milledgeville.

11. Upon information and belief, Defendant RSPS Holdings influenced or

affected the employment practices by Defendant SRS Milledgeville's giving rise to this lawsuit.

12. Defendants are so integrated with respect to ownership and operations as to constitute a single or integrated employer for purposes of the Title VII.

13. Alternatively, Defendants each exercised sufficient control over the terms and conditions of Bates' employment as to constitute Bates' joint employers for purposes of Title VII.

14. At all relevant times, Defendants have collectively and continuously maintained at least 15 employees.

15. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

16. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce under 42 U.S.C. § 2000e(b).

## **ADMINISTRATIVE PROCEDURES**

17. More than thirty days prior to the institution of this lawsuit, Bates filed a Charge of Discrimination with the Commission alleging violations of Title VII by Defendants.

18. On June 29, 2023, the Commission issued a Letter of Determination finding reasonable cause to believe that Defendants had violated Title VII and

inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

19. The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination.

20. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

21. On August 17, 2023, the Commission issued to Defendants a Notice of Failure of Conciliation.

22. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

23. Since at least September or October 2021, Defendants have engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2 by subjecting Bates to a hostile work environment based on her sex.

24. Since at least December 2021, Defendants have engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-3(a) by retaliating against Bates for engaging in protected activity.

25. Defendants hired Bates in or about August 2021 to work as a front-of-

house employee at its Shane's Rib Shack franchise in Milledgeville, Georgia.

26.     At that time, Bates was an eighteen-year-old college freshman.

27.     Defendants frequently employ college students at their Milledgeville restaurant.

28.     Shortly after Bates began working for Defendants, one of the back-of-house shift leaders began flirting with and romantically pursuing Bates, culminating in a consensual kiss on or about September 6, 2021.

29.     On or about September 11, 2021, Defendants gave Bates a positive performance evaluation.

30.     In or about September 2021, Bates ended the relationship with the back-of-house shift leader, including by explicitly asking him to stop flirting with and romantically pursuing her.

31.     The back-of-house shift leader ignored Bates' requests and began to harass Bates based on her sex daily between on or about September 2021 and December 2021.

32.     For example, the back-of-house shift leader began making daily comments to Bates about her appearance and his feelings for her to include, but not be limited to:

    a. "You look pretty"

    b. "I miss you when you're not here"

      c. "I love working with you"

      d. "You smell nice"

      e. "Your jeans look nice"

      f. "You're cute when you get upset"

      g. "I wish I didn't marry my wife so we could be together"

33. The back-of-house shift leader also arranged his schedule to ensure that he worked the same shifts as Bates.

34. On approximately a weekly basis between on or about September 2021 and December 2021, the back-of-house shift leader engaged in more severe harassment toward Bates to include, but not be limited to, following Bates into areas of the restaurant without cameras and demanding that she hug or talk to him in order to pass by him.

35. The back-of-house shift leader also spread false sexual rumors in the workplace about Bates.

36. Bates told the back-of-house shift leader to stop harassing her and to leave her alone several times between September and December 2021.

37. In or about October 2021, Bates told a co-worker that she dreaded going to work because of the back-of-house shift leader's constant harassment.

38. Upon information and belief, Bates' co-worker subsequently told the front-of-house general manager about Bates' complaints.

39. Shortly thereafter, Bates' supervisor approached Bates, and Bates confirmed that the back-of-house shift leader was subjecting her to a hostile work environment based on her sex.

40. Defendants took no remedial action in response to Bates' October 2021 complaint.

41. On or about November 1, 2021, Defendants promoted Bates to a front-of-house shift leader position.

42. On or about November 10, 2021, Bates complained again to Defendants about the back-of-house shift leader's continued harassment, and she provided specific examples of the harassment to the front-of-house general manager.

43. The front-of-house general manager replied that she would speak to the back-of-house shift leader's supervisor about Bates' complaints.

44. Bates' supervisor also told Bates that, if speaking with the back-of-house shift leader did not stop the harassment, the only other option was to schedule Bates and the back-of-house shift in a way that would reduce Bates' hours.

45. On or about November 12, 2021, Bates' supervisor told Bates to report to work for a meeting.

46. Bates' supervisor, the back-of-house shift leader, and the back-of-house general manager were present for the November 12, 2021 meeting.

47. Defendants never told Bates that the back-of-house shift leader would

be included in the November 12, 2021 meeting.

48. During the November 12, 2021 meeting, one or both of the managers questioned Bates regarding the veracity of her complaints against the back-of-house shift leader and suggested that Bates had invited the harassment by the way she dressed. Ultimately, during the November 12, 2021 meeting, the managers expressed that Bates and the back-of-house shift leader had simply "gotten their wires crossed."

49. The back-of-house shift leader subsequently continued to harass Bates through on or about December 2021.

50. On or about December 9, 2021, Bates returned to the metro-Atlanta area for college holiday break, with the understanding that she could return to work for Defendants in January when school resumed.

51. Several other front-of-house employees were also college students who did not work for Defendants for certain weeks in December 2021 and/or January 2022.

52. On or about December 29, 2021, Bates' supervisor requested spring availability for Bates and several other front-of-house employees, and Bates responded the same day indicating that she could return to work on January 10, 2022.

53. On or about December 29, 2021, Defendants notified Bates that she was being terminated effective immediately.

54. Defendants' proffered reasons for terminating Charging Party's

employment are pretext for unlawful retaliation for engaging in protected activity.

55. Upon information and belief, Bates was the only employee not permitted to resume working in January 2022 after the college holiday break.

56. Defendants hired three front-of-house employees between December 9, 2021, and January 10, 2022. At least two of these employees began working on or after the date upon which Bates could have returned to work.

57. At all times relevant to this complaint, Bates satisfactorily performed her duties for Defendants.

## STATEMENT OF CLAIMS

### *Sex Discrimination*

58. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 as if fully asserted herein.

59. Bates, who was female, was a member of a protected class.

60. Bates was subjected to unwelcome harassment that was both subjectively and objectively hostile and abusive, because of her sex, by Defendants' back-of-house shift leader.

61. Defendants had actual knowledge of the back-of-house shift leader's harassment of Bates.

62. Bates complained to her supervisor in or about October 2021 and again in or about November 2021, in accordance with Defendants' policies.

63. Defendants did not take prompt remedial action in response to Bates' complaints.

64. Defendants acted negligently in protecting Bates from the back-of-house shift leader's harassment.

65. The unlawful employment practices complained of above have deprived Bates of equal employment opportunities and have otherwise adversely affected her status as an employee because of her sex.

### *Retaliation*

66. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 65 as if fully asserted herein.

67. In or about October 2021 and in or about November 2021, Bates opposed conduct she reasonably and in good faith believed violated Title VII.

68. On or about December 29, 2021, Bates suffered an adverse employment action when Defendants terminated her employment.

69. Defendants terminated Bates' employment approximately six weeks after she last engaged in protected activity by opposing conduct she reasonably and in good faith believed violated Title VII.

70. Defendants' termination of Bates' employment because of her protected activity was done intentionally and with reckless disregard of her federally protected rights.

71. The unlawful employment practices complained of above have deprived Bates of equal employment opportunities and have otherwise adversely affected her status as an employee because of her participation in statutorily protected activity.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, successors, assigns and all persons in active concert or participation with Defendants, from maintaining a sexually hostile work environment and otherwise engaging in employment practices that discriminate employees based on their sex or from retaliating against employees who engage in protected activity under Title VII.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for female employees, and employees who engage in protected activity, and which eradicate the effects of past and present unlawful employment practices.

C. Order Defendants to make Bates whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

D. Order Defendants to make Bates whole, by providing compensation for

past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.  Order Defendants to make Bates whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.  Order Defendants to pay punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN

-14-

Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

ROBYN M. FLEGAL
Supervisory Trial Attorney

*/s/ Matthew D. O'Brien*
Matthew D. O'Brien
Trial Attorney
Georgia Bar No. 825255
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30
Matthew.obrien@eeoc.gov
Telephone: 470-531-4776
Facsimile: 404-562-6905